Filed 11/14/13  P. v. Campa CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ISAAC JOSEPH CAMPA,<br><br>    Defendant and Appellant. | H039763<br>(Santa Clara County<br>Super. Ct. No. C1349537) |

## I.  INTRODUCTION

Defendant Isaac Joseph Campa pleaded no contest to second degree burglary (Pen. Code, §§459, 460, subd. (b).)[1]  In accordance with the plea agreement, the trial court suspended imposition of sentence and placed defendant on probation on the condition that he serve eight months in the county jail.

Defendant filed a timely notice of appeal, and we appointed counsel to represent him in this court.  Appointed counsel has filed an opening brief that states the case and facts but raises no issue.  We notified defendant of his right to submit written argument on his own behalf within 30 days.  The 30-day period has elapsed and we have received no response from defendant.

---

[1] All statutory references hereafter are to the Penal Code unless otherwise indicated.

Pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106, we have reviewed the entire record. Following the California Supreme Court's direction in *People v. Kelly*, *supra*, at page 110, we provide "a brief description of the facts and procedural history of the case, the crimes of which the defendant was convicted, and the punishment imposed."

## II. FACTUAL BACKGROUND

On the morning of February 6, 2013, the victim and her 13-year-old daughter were at home in San Jose. At about 9:00 a.m., the victim opened the garage door to retrieve her garbage cans from the street. She then saw a man facing the front of her house. He put his hood on his head and his hands in his pockets, and started to walk away. The victim closed her garage door and went inside her house.

About an hour later, at approximately 10:00 a.m., a man rang the doorbell of the victim's house. The victim saw him talking on a cell phone and heard him mention her address. She did not answer the door, which was locked and did not open when the doorknob was "wiggled."

While the victim and her daughter were in the master bedroom, the victim heard noises at the rear sliding glass door. The victim and her daughter hid in a walk-in closet and called 911. Police officers arrived and searched the house. They found a shovel in the victim's bedroom, which the victim stated she had not brought into the house. Additionally, the officers found gold jewelry on the ground underneath the window that the victim identified as hers. The victim also reported that some money from her wallet and some of her jewelry were missing.

Around the time of the burglary, the victim's neighbor and his wife were leaving their home in their car. The neighbor saw two men jump over the victim's backyard fence and depart in a Honda Civic parked at the curb. After the neighbor's wife made an unsuccessful attempt to take a photograph, the couple followed the Honda Civic as it ran through several stop signs and red lights without stopping. During the chase, the

2

neighbor's wife called 911 and provided a partial license plate number for the Honda Civic. The chase ended when the neighbor's vehicle was involved in an accident.

Police officers were able to find a match for the license plate number of the Honda Civic and determined that defendant was an associate of the registered owner. The victim was then transported by police officers to the address for the registered owner, where officers had determined the Honda Civic was parked. Defendant was present and was identified by the victim as the person who rang her doorbell before the burglary.

### III. PROCEDURAL BACKGROUND

The information filed in March 2013 charged defendant with first degree burglary (§§ 459, 460, subd. (a); count 1) and misdemeanor reckless driving (Veh. Code, § 23103, subd. (a); count 2). Defendant's motion pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 was denied during the hearing held on April 24, 2013.

On April 30, 2013, the parties entered into a negotiated plea agreement in which the information was amended to add the charge of second degree burglary (§§ 459, 460, subd. (b); count 3). Defendant pleaded no contest to count 3 with the understanding that counts 1 and 2 would be dismissed and he would be placed on probation with the condition that he serve eight months in the county jail.

The sentencing hearing was held on May 23, 2013. The probation report submitted in connection with the sentencing hearing noted that "defendant stated he is an active Norteños gang member." Defendant also told the probation officer that "[a]s to his future plans, [he] intends to return to work at Largo Concrete, continue to live with his mother, and 'kick it' with his Norteños friends." The trial court suspended imposition of sentence and placed defendant on formal probation for three years with the condition that he serve eight months in the county jail. The court granted defendant presentence credit of 213 days (107 actual days and 106 days pursuant to section 4019). Counts 1 and 2 were dismissed.

3

The trial court imposed additional probation conditions, including the following gang-related conditions: "1. The defendant shall not possess, wear or display any clothing or insignia, tattoo, emblem, button, badge, cap, hat, scarf, bandanna, jacket or other article of clothing that he/she knows or the probation officer informs him/her is evidence of, affiliation with, or membership in a criminal street gang. [¶] 2. The defendant shall not associate with any person he/she knows to be or the probation officer informs him/her is a member of a criminal street gang. [¶] 3. The defendant shall not visit or remain in any specific location which he/she knows to be or which the probation officer informs him/her is an area of criminal-street-gang-related activity. [¶] . . . [¶] 5. The defendant shall not be present at any court proceeding where he/she knows or the probation officer informs him/her that a member of a criminal street gang is present or that the proceeding concerns a member of a criminal street gang unless he/she is a party, he/she is a defendant in a criminal action, he/she is subpoenaed as a witness, or he/she has the prior permission of the probation officer. [¶] . . . [¶] 11. The Court has deemed this offense is gang related and the defendant is ordered to register pursuant to Section 186.30 of the Penal Code with the chief of police/sheriff of the city/county in which he resides, within 10 days of release from custody or within 10 days of his arrival in any city or county, whichever occurs first."

The trial court also ordered defendant to pay a $280 restitution fine (§ 1202.4, subd. (b)(2)) and suspended the imposition of a $280 parole revocation restitution fine (§ 1202.45). The court also ordered payment of a court security fee of $40 (§ 1465.8, subd. (a)(1)), a criminal conviction assessment fee of $30 (Gov. Code, § 70373), and a criminal justice administration fee of $129.75 (Gov. Code, § 29550.2).

At defendant's request, the trial court immediately held a hearing on defendant's ability to pay fees. Defendant testified that he would soon be out of custody. He also testified that he is 19 years old, has no assets, and dropped out of high school in the 11th grade. His employment history includes working in construction for as much as $16 per

4

hour.  After his release, defendant intends to seek employment and believes that he could earn $8 to $10 per hour.  Based on defendant's testimony, the trial court found that defendant had the ability to pay fees.  The court then imposed a presentence investigation fee of $450 (§ 1203.1b) and a probation supervision fee of $50 per month (§ 1203.1b).

## IV.  APPEAL

Two issues are stated in defendant's brief, pursuant to *Anders* v. *California* (1967) 386 U.S. 738, 744-745, "[t]o assist the court in conducting its independent review" of the record.  These issues are (1) "Did the court abuse its discretion in imposing gang conditions on appellant in the absence of evidence that the offense was gang-related?"; and (2) "Did the court abuse its discretion when it imposed nearly $1,000 in fines and fees on appellant and ordered him to pay $110 a month[2] in probation supervision fees, given his testimony that he had no job and no assets?"

Having carefully reviewed the entire record, we conclude that there are no arguable issues on appeal.  (*People v. Wende*, *supra*, 25 Cal.3d at pp. 441-443.)

---

[2] The record reflects that the trial court did not accept the probation officer's recommendation that defendant pay a probation supervision fee of $110 per month and instead ordered defendant to pay a probation supervision fee of $50 per month.

## V.  DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MÁRQUEZ, J.

_____
GROVER, J.